Mark C. Peters [SBN 160611]
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail: mark@dplolaw.com

Attorneys for Plaintiff
ANDREW PASHMAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

ANDREW PASHMAN,

    Plaintiff,

v.

AETNA INSURANCE COMPANY OF CONNECTICUT, a Connecticut company, MEDICITY, INC., and Does 1 through 10,

    Defendants.

Case No. CV 13 2835 DMR

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DAMAGES**
1. Breach of Contract against all Defendants
2. Failure To Pay Wages Due And Owing [California Labor Code §200 Et Seq.] against all Defendants)
3. Breach of Implied Covenant of Good Faith and Fair Dealing against all Defendants
4. Wrongful Termination in Violation of Public Policy against all Defendants
5. Violation of Labor Code § 232

- 1 -
COMPLAINT FOR DAMAGES

## PARTIES

1. Plaintiff ANDREW PASHMAN (hereinafter "PASHMAN") is an individual currently residing in San Francisco County, California and a former employee of MEDICITY, INC., a subsidiary of AETNA INSURANCE COMPANY OF CONNECTICUT.

2. At all times relevant herein, defendant AETNA INSURANCE COMPANY OF CONNECTICUT (hereinafter "AETNA") was and is a Connecticut Corporation licensed to do business in California.

3. At all times relevant herein, MEDICITY, INC. (hereinafter "MEDICITY") was a subsidiary of AETNA INSURANCE COMPANY OF CONNECTICUT.

4. MEDICITY is part of Healthagen, an AETNA business which offers health and related technology services to providers, payers, employers and consumers.

5. PASHMAN sues fictitious defendants DOES 1-10 because their names and/or capacities and/or facts showing them to be liable are not known presently. On information and belief, PASHMAN alleges that their entities and/or capacities shall be ascertained through discovery. PASHMAN will seek leave to amend this complaint to show their true names and capacities when the same has been ascertained. On information and belief, PASHMAN alleges that each defendant designated herein as fictitious defendants were in some manner responsible for the occurrences and damages alleged herein.

6. PASHMAN is informed and believes and thereon alleges that each of the defendants herein, including those fictitiously named, were at all times relevant to this action, the agent, employer, partner, supervisor, joint employer, managing agent, joint venturer, alter ego or part of an integrated enterprise of the remaining defendants and each were acting within the course and scope of that relationship. PASHMAN sues defendants on their own right and on the basis of *respondeat superior*.

7. PASHMAN is further informed and believes and thereon alleges that each of the defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining defendants, including those fictitiously named defendants.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332.

9. This District is the proper venue for this action as a substantial part of the events giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

10. In March, 2010, MEDICITY hired PASHMAN as a Regional Vice President of Sales.

11. In June, 2010, PASHMAN was promoted to Enterprise Area Vice President (EAVP), where his duties consisted of managing three Regional Vice Presidents of Sales covering the Western United States.

12. In February, 2012, PASHMAN had a conversation with his manager, Greg Miller regarding PASHMAN's interest in transferring back into a direct sales role (Enterprise Regional Vice President (ERVP)). Mr. Miller agreed in principle, but both agreed the transition would take some time to be implemented, as a replacement would have to be found. As a result, it was agreed PASHMAN would continue in his role of Enterprise Area Vice President until his replacement was in place.

13. In February, 2012, PASHMAN signed a new commission plan in accordance with MEDICITY's roll-out of that year's commission plans. PASHMAN signed a "FY 2012 Enterprise Area VP Commission Plan," which succeeded the commission plan he had in place at that time. Commissions were based on individual and managed RVP sales.

14. In some deals, including Accountable Care Solutions ("ACS") deals, the Medicity division's products might be included in a "package" along with other Aetna products. In these deals there might not be any actual payment or official charge for the AETNA technology products, which resulted in one team making a sale at the expense of the other. To alleviate this problem, Medicity Commissions Plans granted an employee commission credit (internally called

"book value") even if there was no actual payment for the product. For example, Mr. Pashman's 2012 Plan states:

> A. Commissions are applied as follows: 100% quota and commission credit for Medicity direct sales bookings of software, professional services, integration services, maintenance and hosting when Medicity solutions are included in Aetna ACS deals, provided that the Medicity ERVP is actively engaged in the sales process.
>
> B. "Commission credit" refers simply to the fact that in situations where nothing is actually paid directly for a product the amount of the commission will be based on the "book value" of product (i.e., the commission credit). This was also referred to as "book value pricing."

15. Through May, 2012, PASHMAN's Sales Representative, Paul Jones, had worked with the ACS team at MEDICITY to close a large deal with Banner Health. About $33 million in book value of technology was sold and MEDICITY's own products represented some $13 million of that value.

16. PASHMAN's team's job was to sell the product itself, which was consistent with the way commissions plans were structured for MEDICITY employees, ensuring that teams received the book value in commission credit when their products were delivered, regardless of how or under what auspices funds were paid.

17. Although the deal was closed on or about May 9, 2012, as of June 4, 2012, PASHMAN had no word on when his commission would be forthcoming in spite of numerous inquires and discussions he had with management.

18. In March, 2012, PASHMAN was involved in another deal with Hawaii Pacific Health. In April, 2012, PASHMAN wrote to Mr. Miller regarding his (PASHMAN's) commission's structure and specifically regarding his concerns with how his team would be paid on this ACS-led deal.

19. Mr. Miller promptly replied to PASHMAN and told him not to worry about how PASHMAN would be paid or when, and to also not worry about "things that don't matter."

20. On May 8, 2012, the day before the Banner deal was to close, Mr. Miller tried to get PASHMAN to resign during a telephone which was ostensibly to "address" a rather innocuous email from PASHMAN which described another employee's work product as "shabby." During the course of this conversation Mr. Miller demanded an "explanation" for the email, would not let PASHMAN speak, questioned PASHMAN's competence, his interactions with customers and other employees, and even accused him of insulting superiors (though no details were provided). Increasingly bewildered by the conversation as well as its premise, PASHMAN asked if Mr. Miller was trying to get him to quit. Mr. Miller latched onto this statement, and asserted that PASHMAN was "resigning." PASHMAN of course emphasized that he was not, and at that point stated that he believed it better that conversation proceed with a third party involved if Mr. Miller wanted it to continue.

21. On or about June 14, 2012, PASHMAN had a telephone conversation and the next day sent a follow up email to Mr. Miller again inquiring about the commissions due for the Banner deal. Mr. Miller did not respond to PASHMAN's inquiry.

22. On July 10, 2012, PASHMAN called Mr. Miller and asked when he would be paid his commissions. Mr. Miller told PASHMAN that he was not ready to have this discussion and asserted, for that first time, that PASHMAN was not entitled to the commission because he was not the Manager when the deal closed. PASHMAN transitioned into the ERVP position on May 11, 2012, two days after the Banner deal had been signed.

23. Mr. Miller next claimed PASHMAN "resigned" from his AVP position in February, 2012, which therefore did not entitle him to the Banner commission. PASHMAN was still in the role of EAVP at the time the Banner deal closed.

24. Despite, Mr. Miller's assertion that PASHMAN had resigned, after his conversation with Mr. Miller about transferring back to a direct sales role, PASHMAN had assured Mr. Miller that he would fulfill all the duties of his "current job" until it changed,

- 5 -
COMPLAINT FOR DAMAGES

whenever that might be. PASHMAN continued his current role, which in fact entitled him to the manager's bonus for the Banner deal.

25. Mr. Miller then provided yet another ostensible basis on which to deny PASHMAN's commission on the Banner deal. Mr. Miller indicated to PASHMAN he could not be paid on the Banner deal because no revenue had been "received" by MEDICITY. Mr. Miller indicated revenue would likely be generated two years out. PASHMAN was shocked, as this was the first time there had been any suggestion that the commissions for an ACS shared savings deal would not be valued and paid based on "book value."

26. Next, Mr. Miller asserted he was denying PASHMAN's earned commission based on Miller's assertion that PASHMAN's Salesforce.com data/entries were "out of date."

27. In August, 2012, PASHMAN spoke directly with Mr. Dover (Mr. Miller's boss) regarding the commission for the Banner deal. A few weeks later, Mr. Miller represented to PASHMAN that he would in fact be paid on the Banner deal, but Mr. Miller made no indication of the valuation of the commission.

28. In late August, 2012, Patricia Howard became PASHMAN's direct supervisor.

29. On September 13, 2012, PASHMAN again followed up and wrote to Mr. Dover regarding his outstanding commissions. Mr. Dover responded and indicated he needed to investigate and would not be able to do so until the following week.

30. On October 1, 2012, upon returning from a two week vacation, PASHMAN received an unscheduled call from an investigator from AETNA corporate. The investigator informed PASHMAN he was being investigated and a telephone interview was conducted.

31. The investigator asked PASHMAN, among other things, whether or not PASHMAN intended to bring some sort of legal claim, specifically a "class action lawsuit" against AETNA. PASHMAN responded negatively (indeed, at the time he did not, as he believed the Banner commission would be paid), but he did confirm he had been part of discussions concerning commission payments, and that these discussions did include references to potential claims, including a potential class action.

32. The next morning PASHMAN was terminated.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Breach of Contract Against all Defendants)

As a first separate and distinct cause of action, PASHMAN complains of defendants and for a cause of action states:

33. PASHMAN incorporates by reference paragraphs 1-32, inclusive, of this Complaint as though fully set forth herein.

34. Defendant breached the written and signed FY 2012 Enterprise Area VP Commission Plan, by refusing to pay the commissions owed to PASHMAN pursuant to that agreement.

35. Defendant has refused and continues to refuse to pay PASHMAN his earned commissions and wages.

36. Defendant's performance has not been excused.

37. As a direct, foreseeable, and proximate result of Defendant's breach, PASHMAN has suffered and continues to suffer loss of commission payments and wages in an amount to be proven at trial.

WHEREFORE, plaintiff prays for judgment against Defendants as hereinafter set forth.

### SECOND CAUSE OF ACTION
(Failure to Pay Wages Due And Owing Against All Defendants)
[California Labor Code §200 Et Seq.]

As a second, separate, and distinct cause of action, PASHMAN complains of Defendants and for a cause of action states:

38. PASHMAN incorporates by reference paragraphs 1-37, inclusive, of this Complaint as though fully set forth herein.

- 7 -
COMPLAINT FOR DAMAGES

39. Defendant, and each of them, refused to pay PASHMAN his earned commissions, which constitute wages under California law.

40. Defendants' failure to pay the full amount owed to PASHMAN when it terminated his employment violates the provisions of California Labor Code §200 *et seq.* As of October, 2012 Defendants owed PASHMAN wages pursuant to the written and signed FY 2012 Enterprise Area VP Commission Plan then in effect at the time of the relevant deals here. Defendants have failed and refused, and continue to fail and refuse to pay the amount due.

41. Defendants' actions also constitute a violation of Labor Code §203, for which Defendants owe PASHMAN penalties, as more fully set forth below.

42. Pursuant to California Labor Code §218.5, PASHMAN requests that the Court award PASHMAN's reasonable attorneys' fees and costs incurred by PASHMAN in this action.

WHEREFORE, PASHMAN prays for judgment against defendants as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and Fair Dealing against all Defendants)

As a third separate and distinct cause of action, PASHMAN complains of Defendants and for a cause of action states:

43. PASHMAN hereby incorporates by reference paragraphs 1 throug 42, inclusive, of this Complaint as if fully set forth herein.

44. As a result of the employment relationship which existed between PASHMAN and Defendants and the express promises made in connection therewith, Defendants covenanted and promised to act in good faith towards and deal fairly with PASHMAN, which requires, inter alia, the following:

   A. Each party in the relationship must act with good faith toward the other concerning all matters related to the employment;

   B. Each party in the relationship must act with fairness toward the other concerning all matters related to the employment;

- 8 -
COMPLAINT FOR DAMAGES

  C. Neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship;

  D. Defendant employer would comply with its own representations, rules, policies, and procedures in dealing with PASHMAM;

  E. Defendant employer would not steal PASHMAN's earned commissions;

45. Defendants breached the covenant of good faith and fair dealing, and said breach was wrongful, in bad faith, and unfair, and therefore was a violation of said Defendant's legal duties. Plaintiff further alleges that Defendant breached the covenant of good faith and fair dealing when it:

  A. Repeatedly refused to pay PASHMAN's earned commissions, thereby depriving PASHMAN of obtaining a material benefit of his employment relationship with Defendants;

  B. Terminating PASHMAN's employment when he made a demand for full payment of his earned commissions;

  C. Defendants' breach of the covenant of good faith and fair dealing was a substantial factor in causing damage and injury to the PASHMAN.

46. As a direct and proximate result of Defendants' unlawful conduct herein alleged, PASHMAN has lost earned wages and benefits in an amount that will be proven at trial.

WHEREFORE, PASHMAN prays for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION
(Wrongful Termination in Violation of Public Policy against all Defendants)

As a fourth separate and distinct cause of action, PASHMAN complains of Defendants and for a cause of action states:

47. PASHMAN incorporates by reference paragraphs 1 though 46, inclusive, of this Complaint as though fully set forth herein.

48. It is the public policy of the State of California to prohibit employers from taking adverse actions against employees in a retaliatory manner after an employee demands payment for earned wages. This public policy is embodied in, *inter alia*, the California Government Code, the California Labor Code section 200 *et seq.* including sections 232, and 232.5, and the corresponding California Code of Regulations.

49. As described above, subsequent to Plaintiff lodging his oral and written complaints that he was not paid his earned commissions on the Providence Oregon and Banner deals, Defendants terminated his employment.

50. As a direct and proximate result of the Defendants' wrongful conduct, PASHMAN has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

51. In doing the things alleged herein, the Defendants' conduct was despicable, and Defendants acted toward PASHMAN with malice, oppression, fraud, and with willful and conscious disregard of Plaintiff's rights, entitling PASHMAN to an award of punitive damages.

WHEREFORE, PASHMAN prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION
(Violation of Labor Code § 232 against all Defendants)

As a fifth separate and distinct cause of action, PASHMAN complains of Defendants and for a cause of action states:

52. Plaintiff incorporates by reference paragraphs 1 though 51, inclusive, of this Complaint as though fully set forth herein.

53. Defendant, and each of them, violated Labor Code §232 and the corresponding California Code of Regulations, by terminating PASHMAN after he raised concerns about his earned commissions with his supervisor and the Finance Department.

54. As a direct and proximate result of the Defendants' wrongful conduct, PASHMAN has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

55. In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard of PASHMAN's rights, entitling PASHMAN to an award of punitive damages.

WHEREFORE, PASHMAN prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PASHMAN prays for judgment against Defendants as follows:

1. For compensatory damages, including lost wages, earned commissions, lost employee benefits, bonuses, stocks, mental anguish, emotional distress, and other special and general damages according to proof;

2. For an award of punitive damages;

3. For an award of interest, including prejudgment interest, at the legal rate;

4. For an award to Plaintiff of costs of suit incurred herein on all causes of action;

5. For an award of penalties pursuant to Labor Code § 203;

6. For an award to Plaintiff of attorneys' fees and costs including expert costs pursuant to Labor Code § 218.5;

7. For an award to Plaintiff of such other and further relief as this court deems just and proper.

Dated: June 20, 2013

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

By: /s/ Mark C. Peters
Mark C. Peters
Attorneys for Plaintiff
ANDREW PASHMAN

- 11 -
COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

Dated: June 20, 2013

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

By: /s/ Mark C. Peters
Mark C. Peters
Attorneys for Plaintiff
ANDREW PASHMAN